No. 23-1787

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**VIVINT, INC.,**

*Appellant*

v.

**ADT LLC, ALARM.COM INC.,**

*Appellees,*

APPEAL FROM THE PATENT TRIAL AND APPEAL BOARD OF THE UNITED STATES PATENT AND TRADEMARK OFFICE
NO. IPR2021-01374 (U.S. PATENT NO. 7,956,739)
(Hon. Iftikhar Ahmed, Administrative Patent Judge)

**APPELLANT VIVINT, INC.'S REPLY BRIEF**

R. PARRISH FREEMAN
ERIC L. MASCHOFF
**MASCHOFF BRENNAN**
1389 Center Drive, Ste. 300
Park City, Utah 84098
Telephone: (435) 252-1360

STERLING A. BRENNAN
L. REX SEARS
**MASCHOFF BRENNAN**
111 S Main Street, Ste. 600
Salt Lake City, Ut 84111
Telephone: (801) 297-1850

*Attorneys for Appellant*

NOVEMBER 29, 2023

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

UPDATED STATEMENT OF RELATED CASES ................................. 2

ARGUMENT ............................................................................................... 2

I.   Appellees miscast the issue presented. ........................................... 2

     A.   Vivint's argument goes to the ordinary and customary meaning; Vivint is not arguing for an exception thereto. ...... 2

     B.   The ordinary and customary meaning is dictated by the patent as a whole, not the claim language in isolation. ......... 4

II.  Appellees, following the Board, misanalyze the intrinsic evidence. ......................................................................................... 6

     A.   The claim's silence about a location service supports Vivint's construction of location determination. ................... 6

     B.   The specification does not describe the *use* of a location service as optional. ............................................................. 8

III. The errant articulation of issues by the Board below and Appellees here also misallocates the burden of persuasion. ......... 11

CONCLUSION ......................................................................................... 13

CERTIFICATE OF SERVICE ................................................................. 15

CERTIFICATE OF COMPLIANCE ........................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*D Three Enterprises, LLC v. SunModo Corp.*,
 890 F.3d 1042 (Fed. Cir. 2018) .......................................................... 10

*Dynamic Drinkware, LLC v. National Graphics, Inc.*,
 800 F.3d 1375 (Fed. Cir. 2015) .......................................................... 12

*Ericsson Inc. v. TCL Communication Technology Holdings Ltd.*,
 955 F.3d 1317 (Fed. Cir. 2020) .......................................................... 10

*Parker v. Flook*,
 437 U.S. 584 (1978) ............................................................................ 10

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) .................................................. 4, 5, 6

*Retractable Technologies, Inc. v. Becton, Dickinson & Co.*,
 653 F.3d 1296 (Fed. Cir. 2011) ............................................................ 1

*SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*,
 859 F.2d 878 (Fed. Cir. 1988) ............................................................ 13

*Technology Licensing Corp. v. Videotek, Inc.*,
 545 F.3d 1316 (Fed. Cir. 2008) .......................................................... 12

*Texas Digital Systems, Inc. v. Telegenix, Inc.*,
 308 F.3d 1193 (Fed. Cir. 2002) .................................................. 4, 5, 6

*Thorner v. Sony Computer Entertainment America LLC*,
 669 F.3d 1362 (Fed. Cir. 2012) ............................................................ 3

*Wisconsin Alumni Research Foundation v. Apple Inc.*,
 905 F.3d 1341 (Fed. Cir. 2018) ............................................................ 5

**Statutes**

35 U.S.C. § 282 ........................................................................................ 13

35 U.S.C. § 316 ........................................................................................ 12

# INTRODUCTION

Vivint contends that "determin[ing/e] a current location of [the watcher/a user]" means *using a location service* to determine the location of a device associated with the user. "There is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). This appeal requires the Court to decide on which side of that line Vivint's contention falls.

According to Appellees ADT LLC, Alarm.com Inc. Response Brief ("RB"), "Vivint's interpretation/importation distinction is illusory." RB6. But this Court's jurisprudence establishes otherwise. Although the distinction may be a "fine" one, it is real. *See, e.g., Retractable Techs.*, 653 F.3d at 1305.

This Court should reverse and remand because *as a matter of construction*, current-location-determination, in the context of the '739 patent, requires the use of a location service.

# UPDATED STATEMENT OF RELATED CASES

There are no prior appeals in or from the Board proceeding from which this appeal arises. *Vivint, Inc. v. ADT LLC*, No. 2:21-cv-00115 in the United States District Court for the District of Utah, and *Vivint, Inc. v. SkyBell Technologies, Inc.*, No. 2:21-cv-09472 in the United States District Court for the Central District of California, will be directly affected by this court's decision in the pending case. The latter case was commenced as a result of Vivint transferring the '739 patent infringement counterclaim originally stated in *SB IP Holdings, LLC v. Vivint Smart Home, Inc.*, No. 4:20-cv-00886 in the United States District Court for the Eastern District of Texas. The California action was inadvertently omitted from the statement of related cases in Vivint's opening brief.

# ARGUMENT

## I. Appellees miscast the issue presented.

### A. Vivint's argument goes to the ordinary and customary meaning; Vivint is not arguing for an exception thereto.

Appellees rely primarily on cases addressing when a limitation is properly imported from the specification into the claims, which explain:

2

> The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history. There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

*Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). But here, Vivint is *not* invoking an exception. Vivint is *not* asking the Court to depart from the "ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." Rather, Vivint is asking the Court to rule that the "ordinary and customary meaning" includes the use of a location service.[1] Lexicography and disavowal are beside the point, and Appellees' effort to frame the issue as whether Vivint has shown that the Court should import a limitation into the claims is a distraction.

---

[1] According to Appellees: "Nor does Vivint argue that a person of ordinary skill in the art would have understood the phrase 'determin[ing/e] a current location' to mean determin[ing/e] a location 'using a location service'." RB6. But Appellees are wrong: that is *exactly* Vivint's argument.

3

**B.     The ordinary and customary meaning is dictated by the patent as a whole, not the claim language in isolation.**

The reasoning of the Board below and Appellees here exemplifies the approach taken by the line of cases that this Court disapproved in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc)—with *Phillips* characterizing *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), as the "leading case." *Phillips*, 415 F.3d at 1319. According to the disapproved *Texas Digital* line of authority, construction starts with "the ordinary meaning reflected, for example, in a dictionary definition," and then asks whether the intrinsic evidence justifies a departure from that meaning. *Texas Digital*, 308 F.3d at 1204; *see also Phillips*, 415 F.3d at 1319.

Here, the Board may not have quoted a dictionary definition. But it adopted as the starting point a broad notion of location determination, based solely on the claim language, and then framed and conducted the inquiry as if the only question were whether Vivint had shown that the specification justifies some narrowing of that starting point. The Board's analysis "begin[s] with the claim language"—which the Board then contrasts with "Patent Owner's

4

arguments," which "are instead based on its reading of the … specification." APPX00016.

The Board's mode of analysis—start with a broad reading of the claim language, then ask if the specification narrows it—is the disapproved *Texas Digital* approach. This Court's *Phillips* analysis is different. Under *Phillips*: "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." 415 F.3d at 1321. The ordinary meaning starting point from which deviation must be proven is the meaning "after reading the entire patent," not the claim language in isolation. *See Wisconsin Alumni Research Found. v. Apple Inc.,* 905 F.3d 1341, 1352 (Fed. Cir. 2018) ("rather than improperly reading a limitation from the preferred embodiment into the claims, the district court's construction, with which we agree, properly reads the claim term in the context of the entire patent"), *cert. denied,* 140 S. Ct. 44 (2019).

Indeed, as pointed out in the Corrected Appellant Vivint, Inc.'s Opening Brief ("AOB"), the claim language in isolation might support an interpretation of "determining a current location of the watcher" that is broad enough to encompass manual location methods, such as private

investigators. AOB16-17.[2] Recourse must be had to the specification throughout, to determine the *relevant* ordinary-meaning starting point; it is improper to defer consultation of the specification until after an ordinary meaning is determined, as the Board did. That approach builds into the analysis the very type of bias that *Phillips* identified and rejected when it disapproved the *Texas Digital* line of cases.

## II. Appellees, following the Board, misanalyze the intrinsic evidence.

Appellees echo to two intrinsic-evidence arguments made by the Board. Both are mistaken.

### A. The claim's silence about a location service supports Vivint's construction of location determination.

First, the Board pointed out that "the usage of '[determining or determine] a current location' in the claims does not in any way indicate

---

[2] According to Appellees: "Before the Board, ***Vivint*** argued that the 'plain meaning' of this term included a physical location of a computing device (or mobile device) associated with the user. APPX03215. On appeal, Vivint now reverses course …" RB21. But the cited source shows Vivint advocating exactly the position it advocates on appeal: "the plain meaning, in view of the specification, requires the use of a 'location service'—a term of art consistently attached to location determination in the specification—which supplies the estimated geographic location of a user's mobile device." APPX03215.

a specific method of doing so." APPX00016. In particular, none of the claims recites *using a location service* to determine location.

Appellees say, "Vivint does not take issue with this aspect of the Board's decision." RB7. Although Vivint agrees that the claims do not separately recite using a location service, Vivint does dispute the conclusion to be drawn from that observation. The fact that none of the claims separately recites using a location service actually favors Vivint's position. If the claims (some or all) had explicitly recited using a location service as a way to determine location then that would have told against Vivint's contention that use of a location service is already built into location determination. Conversely, the absence of "location service" from the claims favors Vivint's construction of location determination as already incorporating the use of a location service.

The only method the specification acknowledges for determining location is using a location service; no *other* way to determine location mattered enough—was contemplated, or was significant enough—to be mentioned. If the applicant nonetheless understood using a location service to be separate and apart from determining a location then one

7

would have expected to see at least a dependent claim saying, e.g., "wherein the location is determined using a location service."

### B. The specification does not describe the *use* of a location service as optional.

The other intrinsic-evidence argument made by the Board and echoed by Appellees is that the specification describes a location service as optional. APPX00017-20; RB9-17. However, as Vivint pointed out: although the specification, when describing the inventive *architecture*, describes the location service as optional, the specification, when describing the inventive *method*, does *not* describe the *use* of a location service as optional. AOB17-22. This makes the patent broad enough to cover embodiments where an accused infringer invokes a location service provided by someone else, to determine location, and thus avoids a potential divided-infringement problem.

Appellees make three arguments in response: one that is specific to Fig. 9, which illustrates the inventive method; another that is based on Fig. 4; and a third that is not specific to any figure. The Fig. 9 argument is that the specification indicates:

> The operations included in process 900 are for illustration purposes. Providing doorbell presence service may be implemented by similar processes with

8

> fewer or additional steps, as well as in different order of operations using the principles described herein.

*See* RB20. But obviously, the "different order of operations" disclaimer is irrelevant to how location is determined, i.e., to whether it is determined with a location service. So is the other disclaimer, that the "service may be implemented … with fewer or additional steps": the issue presented is how step 904, "Determine Current Location of Resident," is performed; that this step might be omitted altogether is irrelevant to how it is performed when *not* omitted.

Regarding Fig. 4, Appellees argue: "the location of the user is determined by the 'doorbell application 232' rather than the 'optional location service 236,'" which supposedly "makes it clear that the use of 'optional' was not meant to indicate that the optional location service 236 were part of the application layer 200 or external to it, but rather whether the optional location service 236 was used at all." RB20. Not so. In connection with Fig. 4, the specification does say: "Doorbell application 232 determines a location of the user …" APPX00152 at 6:64-65. But Fig. 4 is not freestanding. Instead, "FIG.4 illustrates the example doorbell presence service of FIG.2." *Id.* at 6:50-51. And in connection with Fig. 2, the specification explains: "Doorbell application

9

232 is configured to … communicate with presence server 234 and optional location service 236 to determine a location." *Id.* at 5:32-35. Contra Appellees, then, the patent's Fig. 4 disclosure *does not* teach that "the location of the user is determined by the 'doorbell application 232' *rather than* the 'optional location service 236'"; instead, it teaches that the doorbell application "communicate[s] with … location service 236 to determine a location."

Finally, Appellees' general argument is that the specification is sprinkled with statements that the embodiments described are exemplary, or illustrative, and not limiting. But competent patent drafters routinely include such stock, boilerplate disclaimers in their applications. "It is well recognized that such a generalized wrap-up does not enlarge the claims beyond what is described and enabled in the specification." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1338 (Fed. Cir. 2020) (Newman, J., dissenting) (*citing D Three Enterprises, LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018)). Further, the Supreme Court has warned against making patentability "depend simply on the draftsman's art." *Parker v. Flook*, 437 U.S. 584, 593 (1978). Whether the drafter of the '739 patent was

10

sophisticated and experienced enough to include standard, routine disclaimers should have no bearing on whether a claim construction that leads to a judgment of unpatentability is adopted.

### III. The errant articulation of issues by the Board below and Appellees here also misallocates the burden of persuasion.

According to Appellees: "Vivint's appeal rests entirely on the premise that if the *specification* consistently includes an element in its description of the invention, the *claims* should be limited to that element, even where the element is *not recited in the claims*." RB3. That is wrong on multiple levels. First, Vivint's point is that the claims already include using a location service because that is part of what it means, in the context of the '739 patent, to determine location. Second, Vivint's claim construction contention is bolstered by, e.g., the fact that none of the claims separately recites using a location service, and by the fact that the specification describes a location service as optional in connection with architecture but not in connection with method.

Finally, the Board already—at least implicitly, and properly in any event—decided that manual methods (e.g., private investigators) are not covered by the claim language. Having already departed from the broadest a-contextual interpretation that might have been given to

the claim language, by requiring a computer-implemented method of location determination, there is no principled reason not to construe the language to require the *specific* computer-implemented method disclosed, i.e., a location service. *See* AOB22-25.

All that gets lost in the Board's decision and Appellees' brief because in addition to mischaracterizing Vivint's actual arguments and misanalyzing the intrinsic evidence, Appellees follow the Board in misallocating the burden of persuasion. Like the Board, Appellees repeatedly insist that *Vivint* has something to prove, and that *Vivint* has failed to carry its burden. But "[i]n an inter partes review … the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence." 35 U.S.C. § 316(a). "[I]f the fact trier of the issue is left uncertain, the party with the burden loses." *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015) (on appeal from *inter partes review*) (quoting *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008)).

More generally, "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

35 U.S.C. § 282(a). "That presumption places the burden of proof of facts, and the ultimate burden of persuasion to establish invalidity, on [Appellees]." *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 885 (Fed. Cir. 1988).

By biasing the analysis in favor of a broad, invalidating construction, derived from a-contextual consideration of the claim language alone, and arguing that Vivint must prove derogation therefrom, first the Board and now Appellees improperly shift Appellees' burden to Vivint. But the fundamental question is not, as decided by the Board below and argued by Appellees here, whether Vivint has shown its narrower construction is correct: instead, it is whether Appellees have justified their broader construction. Because they have not, this Court should vacate and remand.

## CONCLUSION

Because the specification makes clear that the patentee used "determin[ing/e] a current location" as shorthand for "use a location service—your own, or someone else's—to determine location"—more to the point, because *Appellees* have not shown otherwise—this Court should vacate and remand.

Respectfully submitted this 29th day of November, 2023.

                BY:  */s/ L. Rex Sears*
                      R. PARRISH FREEMAN
                      ERIC L. MASCHOFF
                      **MASCHOFF BRENNAN**
                      1389 Center Drive, Ste. 300
                      Park City, Utah 84098
                      Telephone: (435) 252-1360

                      STERLING A. BRENNAN
                      L. REX SEARS
                      **MASCHOFF BRENNAN**
                      111 S Main Street, Ste. 600
                      Salt Lake City, Ut 84111
                      Telephone: (801) 297-1850
                      *Attorneys for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2023 an electronic copy of the foregoing **APPELLANT VIVINT, INC.'S REPLY BRIEF** was filed electronically with the U.S. Court of Appeals for the Federal Circuit by means of the Court's CM/ECF system and thereby causing a "Notice of Electronic Filing" to be served on all counsel of record.

Date: November 29, 2023    */s/ L. Rex Sears*
                                                           L. Rex Sears

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 2,397 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Date: November 29, 2023    */s/ L Rex Sears*
                                                           L. Rex Sears